UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| HALL & ASSOCIATES, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 19-1095 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 8, 9 |
| | : | | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS

MOTION FOR SUMMARY JUDGMENT

**I.  INTRODUCTION**

This case arises out of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and concerns requests for email distribution lists in the possession of the Environmental Protection Agency ("EPA").  Plaintiff filed FOIA requests for electronic copies of the email distribution lists used for communications sent by EPA in July 2018 and February 2019.  EPA has withheld the email distribution lists pursuant to FOIA Exemption 6, which exempts matters that are "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  In their motions for summary judgment, the parties disagree about the scope of the "similar files" portion of Exemption 6 and about the private and public interests at stake in withholding or disclosing the email distribution lists.  For the reasons explained below, the Court finds that Exemption 6 properly applies to the email distribution lists in question and, therefore, grants EPA's motion for summary judgment and denies Plaintiff's cross motion for summary judgment.

## II.  FACTUAL BACKGROUND

On July 13, 2018, the Water Security Division of EPA sent an email through an online platform called Constant Contact with the subject line "Prepare for Harmful Algal Blooms." EPA Statement of Material Facts ("EPA's SMF") ¶ 2, ECF No. 8-2; Pl.'s Statement of Material Facts ("Pl.'s SMF") ¶ 2, ECF No. 9-3.  On February 14, 2019, EPA's Office of Water sent an email, also through the Constant Contact platform, with the subject line "Conestoga River Watershed."  EPA's SMF ¶ 21; Pl.'s SMF ¶ 22.  Through two separate FOIA requests, Plaintiff requested an electronic copy of the email distribution lists used for each of these email communications.  EPA's SMF ¶¶ 1, 20; Pl's SMF ¶¶ 2, 22.

Each distribution list is constructed primarily by individual users voluntarily signing up to receive periodic updates from the respective EPA offices.  EPA explains that individuals can be put on the Water Security Division distribution list by self-registering via text, being a registered attendee of a conference where the Water Security Division is an exhibitor, or by self-registering through the Water Security Division's webpage.  EPA's SMF ¶ 3.  Similarly, individuals can be put on the Office of Water's distribution list by self-registering online and selecting from various topic areas of interest.  *Id.* ¶ 22.  When signing up through the online portal for either distribution list, the following language appears at the bottom of the webpage:

> By submitting this form, you are consenting to receive marketing emails from: US EPA [Water Security Division or Office of Water], 1200 Pennsylvania Ave NW, Washington, DC, 20460 United States . . . You can revoke your consent to receive emails at any time by using the SafeUnsubscribe® link, found at the bottom of every email.

*Id.* ¶¶ 4, 23; Pl.'s SMF at 10, 17.  The Water Security Division email distribution list associated with the "Prepare for Harmful Algal Blooms" email contains approximately 19,000 email addresses and includes the names of individuals or organizations associated with the addresses.

EPA's SMF ¶¶ 5, 13.  The Office of Water distribution list associated with the "Conestoga River Watershed" email contains approximately 47,000 email addresses but does not include the names of individuals associated with the addresses.  *Id.* ¶ 25.

In response to the request for the "Prepare for Harmful Algal Blooms" email, EPA eventually produced the email distribution list with all email addresses redacted while leaving the names associated with the addresses.  *Id.* ¶ 13.  EPA had initially considered attempting to identify which email addresses are associated with private individuals and which addresses are associated with business or public-facing organizations but estimated the cost of such an approach would exceed $1000.  Travers Decl. ¶ 10, ECF No. 8-3.  In contrast, EPA has determined that the cost for producing the list with the emails redacted totaled $98—which Plaintiff has not paid.  EPA's SMF ¶ 15.  With respect to the request for the "Conestoga River Watershed" email, EPA withheld in full the distribution list—which does not include names of individuals or organizations associated with the email addresses.  *Id.* ¶¶ 25, 27.

### III.  LEGAL STANDARD

FOIA requires agencies to disclose records located in response to a valid FOIA request, unless material in the records falls within one of FOIA's nine statutory exemptions.  5 U.S.C. § 552(b); *see also Judicial Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 738 (D.C. Cir. 2017); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975).  "FOIA cases typically and appropriately are decided on motions for summary judgment."  *Pinson v. U.S. Dep't of Justice*, 236 F. Supp. 3d 338, 352 (D.D.C. 2017) (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)).  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In a FOIA suit, summary judgment is appropriate "if no

material facts are genuinely in dispute and the agency demonstrates 'that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information.'" *Prop. of the People, Inc. v. Office of Mgmt. and Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (quoting *Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d 172, 181 (D.D.C. 2017)).

The reviewing court may grant summary judgment based on the record and agency declarations if "the agency's supporting declarations and exhibits describe the requested documents and 'the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Pronin v. Fed. Bureau of Prisons*, No. 17-cv-1807, 2019 WL 1003598, at *3 (D.D.C. Mar. 1, 2019) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (internal citation omitted)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Scudder v. Cent. Intelligence Agency*, 254 F. Supp. 3d 135, 140 (D.D.C. 2017) (quoting *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (internal citations omitted)). But exemptions are to be "narrowly construed." *Bloche v. Dep't of Defense*, 370 F. Supp. 3d 40, 50 (D.D.C. 2019) (quoting *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1115 (D.C. Cir. 2007)). An agency must do more than provide "summary statements that merely reiterate legal standards or offer 'far-ranging category definitions for information.'" *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 955 F. Supp. 2d 4, 13 (D.D.C 2013) (quoting *King v. U.S. Dep't of Justice*, 830 F.2d 210, 221 (D.C. Cir. 1987)).

## IV. ANALYSIS[1]

### A. Exemption 6

FOIA Exemption 6 applies to information included in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  Courts in this District have framed Exemption 6 as having two requirements: (1) the information must be contained in personnel, medical, or similar files; and (2) the information must be of such a nature that its disclosure would constitute a clearly unwarranted invasion of personal privacy.  *Ctr. for Biological Diversity v. U.S. Army Corps of Engineers*, 405 F. Supp. 3d 127, 143 (D.D.C. 2019) (citing *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 598 (1982)).

The Supreme Court has held that Exemption 6 is not limited "to a narrow class of files containing only a discrete kind of personal information" but rather should be broadly applied "to cover detailed Government records on an individual which can be identified as applying to that individual." *Washington Post*, 456 U.S. at 602.  The Court also embraced the legislative history on the exemption stating that "'the balancing of private interest against public interest, not the nature of the files in which the information was contained, should limit the scope of the exemption.'" *Id.* at 599.  For this reason, the D.C. Circuit has found that "similar files" should be read to include "bits of personal information, such as names and addresses, the release of which would 'create[] a palpable threat to privacy.'" *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 152–53 (D.C. Cir. 2006) (quoting *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 391 (D.C. Cir. 1987)).  Based on this precedent, courts in this District have held that Exemption 6 applies to email addresses. *See Baldwin v. U.S. Dep't of Energy*, No. 18-cv-1872,

---

[1] The sufficiency of EPA's search for responsive documents is not in dispute.

2020 WL 376563, at *4 (D.D.C. Jan. 23, 2020) (finding Exemption 6 applies to emails); *Shurtleff v. United States Envtl. Prot. Agency*, 991 F. Supp. 2d 1, 18 (D.D.C. 2013) ("Exemption 6 allows an agency to withhold personal identifying information, such as email addresses . . . ."); *Prechtel v. Fed. Commc'ns Comm'n*, 330 F. Supp. 3d 320, 329 (D.D.C. 2018) (finding that the definition for similar files "encompasses email addresses.") (citing *Bayala v. U.S. Dep't of Homeland Sec.*, 264 F. Supp. 3d 165, 178 (D.D.C. 2017)).

To determine whether disclosure of information "would constitute a 'clearly unwarranted invasion of personal privacy,' the Court must balance the 'privacy interest in non-disclosure against the public interest in the release of the records.'" *Prechtel*, 330 F. Supp. 3d at 329 (quoting *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999)). The privacy interest at stake must be substantial, meaning "one that is 'more than *de minimis*.'" *Ctr. For Biological Diversity*, 405 F. Supp. 3d at 143 (quoting *Nat'l Ass'n of Retired Fed. Employees v. Horner (NARFE)*, 879 F.2d 873, 874 (D.C. Cir. 1989)). Because substantial means only an interest that is more than *de minimis*, the D.C. Circuit has acknowledged that use of the word "substantial in this context means less than it might seem." *Multi Ag Media LLC v. Dep't of Agriculture*, 515 F.3d 1224, 1229 (D.C. Cir. 2008). Whether disclosure of information is a "significant or a *de minimis* threat depends on the characteristic(s) revealed by virtue of being on a particular list, and the consequences likely to ensue." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 178 n.12 (1991) (quoting *NARFE*, 879 F.2d at 877). The only relevant public interest is "the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 46 (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994)).

## B. EPA's Application of Exemption 6[2]

### 1. Similar Files

EPA states that it "determined that the withheld information falls within the scope of 'personnel and medical and similar files' because the email addresses contained in the" distribution lists apply to and can be identified with specific individual users. EPA's Mem. Supp. Mot. Summ. J. ("EPA's Mot.") at 8, ECF No. 8-1. Because "the email addresses at issue can be identified with the individual user who signed up to receive EPA communications," *id.* at 5, EPA argues that the distribution lists appropriately can be considered "similar files." Plaintiff, on the other hand, argues that "no evidence exists that these distribution lists can be applied to or identified with a specific individual." Pl.'s Opp'n and Mem. Supp. Cross Mot. Summ. J. (Pl.'s Mot.") at 17, ECF No. 9-1. Because the distribution lists do not contain other personal information about the owners of the email addresses, Plaintiff argues they cannot be considered "similar files" under D.C. Circuit precedent. *Id.* at 19. Plaintiff compares the release of the email distribution lists to the release of a list of blood types that does not include any other identifying information. Pl.'s Reply at 9, ECF No. 15. Furthermore, Plaintiff challenges EPA's declaration on this point as conclusory because it "simply presumes that any email address is a 'similar file' to a personnel file." Pl.'s Mot. at 20.

---

[2] In addition to the arguments addressed below, Plaintiff also objects to what it calls the conclusory nature of the declarations. Pl.'s Mot. at 13–15. But, because of the easy-to-understand nature of distribution lists at issue, the Court finds that the declarations sufficiently describe the records and the reasons for withholding. *See Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*, 830 F.3d 667, 675 (D.C. Cir. 2016) (permitting a category approach to redactions where "the documents within each category are sufficiently similar . . . to allow a court to determine whether the specific claimed exemptions are properly applied.") (internal quotations omitted).

Like other courts in this District have determined before, the Court concludes that the emails contained in the distribution lists fall within the scope of "similar files." *See Baldwin*, 2020 WL 376563, at *4; *Shurtleff*, 991 F. Supp. 2d at 18; *Prechtel*, 330 F. Supp. 3d at 329; *Bayala*, 264 F. Supp. 3d at 178. The email distribution lists contain "bits of personal information" that normally remain private unless shared. Unlike a list of blood types, which cannot be tied to any individual, a list of email addresses allows for immediate communication with the email account owners; email addresses are unique identifiers just like physical addresses and they can be identified with their owner. *See Judicial Watch, Inc.*, 449 F.3d at 152–53. Given the Supreme Court's guidance to interpret the "similar files" provision broadly, *see Washington Post*, 456 U.S. at 602, the Court will not block the invocation of Exemption 6 on this threshold matter as Plaintiff suggests.

2. Balancing of Interests

EPA's declarations explain that the agency "determined there is a significant privacy interest in an individual user's email address" and that the users on the email lists have a privacy interest "in avoiding public disclosure of their email addresses." Travers Decl. ¶ 24; Lousberg Decl. ¶ 15, ECF No. 8-4. The declarations note that the "individual users provided EPA their email addresses to receive emails only from EPA" and that "release to the public of an email list . . . would allow third parties to take possession of this list, and harass and spam the individual users with unsolicited communications." Travers Decl. ¶ 24; Lousberg Decl. ¶ 15. With respect to a public interest in release, the declarations state that "there is no cognizable public interest in releasing the personal information withheld under Exemption 6 because this information sheds no light on the Agency's performance of its official duties." Travers Decl. ¶ 25; Lousberg Decl. ¶ 16. According to EPA, "[d]isclosure of the email addresses . . . would reveal nothing about

how EPA performs its statutory duties." Travers Decl. ¶ 25; Lousberg Decl. ¶ 16.  The agency "weighed the significant privacy interests . . . against the absence of public interest in disclosure and concluded that disclosure would constitute a clearly unwarranted invasion of personal privacy." Travers Decl. ¶ 26; Lousberg Decl. ¶ 17.

Plaintiff argues that there is no evidence that disclosure of the list would lead to harassment or unwanted communications. Pl.'s Mot. at 21–23.  Because the email distribution lists contain no additional personal information, Plaintiff claims that disclosure of the list does not reveal any characteristics about an individual's personal life. *Id.* at 23–24. Furthermore, Plaintiff claims that the possibility of unsolicited contacts does not create an unwarranted invasion of privacy justifying the withholding of the information.[3]  *Id.* at 25–26.  Plaintiff suggests that because unwanted email can be easily ignored, any privacy interest would not be more than *de minimis*. *Id.* at 25.  Plaintiff acknowledges that it seeks to use the lists to "provide those parties . . . with balanced information" on topics of specific interest to the individuals but claims that such communications do not implicate a privacy interest or amount to harassment given the expressed interests of the individuals on the lists. *Id.* at 26.  Finally, Plaintiff identifies what it claims are two public interests justifying disclosure: first, the lists demonstrate with whom the government is communicating, and second, the lists demonstrate "what the

---

[3] Plaintiff also contends that because EPA has released email addresses in response to FOIA requests in the past, its invocation of Exemption 6 is now improper. *Id.* at 26–28. Plaintiff offers no precedent or other authority to support the argument that because an agency has voluntarily disclosed a certain type of information in the past, it must disclose that type of information from that point forward. Circuit precedent contradicts Plaintiff's position. *See Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 464 (D.C. Cir. 2014) ("[A]n agency does not forfeit the benefit of a FOIA exemption simply because of its prior decision to voluntarily release other similar information").

government is up to" because they show "the apparent new vehicle for how EPA is communicating its national regulatory policies and future actions with the public." *Id.* at 28–29.

As an initial matter, the Court notes a distinction between email addresses held privately—email addresses not available through any public source—and email addresses available publicly, such as an official email address for a business or organization. Courts in this District have routinely held that release of privately held email addresses would implicate a privacy interest. *See Gov't Accountability Project*, 699 F. Supp. 2d at 106 (noting a "clear privacy interest in avoiding disclosure of [] personal email addresses."); *Judicial Watch, Inc. v. U.S. Dep't of State*, 306 F. Supp. 3d 97, 117 (D.D.C. 2018) (finding that "case law is clear that there is a substantial privacy interest in full email addresses") (citations omitted); *Prechtel*, 330 F. Supp. 3d at 329 (noting that "courts in this district have attached a substantial privacy interest to the email addresses of private individuals") (internal citations omitted). Courts have also upheld the withholding of email addresses used for work purposes where they are not publicly available. *See Williams LLP v. U.S. Envtl. Prot. Agency*, 346 F. Supp. 3d 61, 86 (D.D.C. 2018) (concluding that redacting employee's work email address and mobile phone number under Exemption 6 was proper); *Shurtleff*, 991 F. Supp. 2d at 18; *see also Seife v. U.S. Dep't of State*, 298 F. Supp. 3d 592, 629 (S.D.N.Y. 2018) (concluding that Exemption 6 properly applies to official government email addresses that are not publicly available). Publicly available email addresses, however, do not implicate a privacy interest protected by Exemption 6. *See Multi Ag Media LLC*, 515 F.3d at 1228 (explaining that Exemption 6 does not protect the privacy interests of businesses or corporations). For a publicly available address, unsolicited contact might actually serve the interests of the account owner as a means to develop business. As such, the following analysis relates only to those email addresses that are privately held; the Court

discusses publicly available email addresses that may appear on the distribution lists in its discussion of segregability below.

The Court finds that while disclosure of the privately held email addresses may implicate a rather modest privacy interest, it is more than *de minimis*. In *NARFE*, the D.C. Circuit considered whether unwanted intrusions or solicitations can constitute a substantial enough privacy interest to prevent disclosure. There, the court stated "there is a substantial probability that the disclosure [of names and addresses] will lead to threatened invasion: one need only assume that business people will not overlook an opportunity to get cheaply from the Government what otherwise comes dearly, a list of qualified prospects . . . ." *NARFE*, 879 F.2d at 878. A large email distribution list generated primarily based on self-identified interest in particular topics holds undeniable value. Furthermore, in this case, the disclosure statement on EPA's website stated that submitting the form indicated consent to receive emails from EPA and that consent could be revoked at any time by clicking a link at the bottom of the email communications. EPA's SMF ¶¶ 4, 23. Could consent be revoked in a similar manner for communications from FOIA requesters utilizing the disclosed distributions lists? *See Pavement Coating Tech. Council v. United States Geological Survey*, 436 F. Supp. 3d 115, 132 (D.D.C. 2019) ("The prospect of such solicitation is also especially troublesome where, as here, the volunteers who participated in the survey were initially told [their personally identifiable information] would remain confidential . . . ."). Plaintiff claims that unwanted solicitation is unlikely and, even if it does occur, ignoring and deleting an email is easy enough to render the invasion of privacy *de minimis*. The Court disagrees. As pointed out by EPA, Plaintiff admits it wants to utilize the email distribution lists to contact the individuals—it is plausible that others would want to do the same. And while unwanted emails can be dealt with in rather short order,

that does not change the interest individuals have in keeping their email addresses private and controlling the dissemination of that information. Like other courts in this District have held before, this Court finds there is a greater than *de minimis*—that is to say, a substantial—privacy interest in nondisclosure of private email addresses. *See e.g.*, *Gov't Accountability Project*, 699 F. Supp. 2d at 106.

The Court finds that Plaintiff's first proffered public interest in disclosure does not outweigh the private interests at stake. Plaintiff claims that release of the distribution lists "would inform the public to whom the Government is" communicating and suggests that release would reveal parties that "seek to influence agency policy and decisions." Pl.'s Mot. at 28–29. While it is true that releasing the distribution lists would reveal who received the email communications at issue, the agency declarations demonstrate that, because of how the lists were constructed, disclosure would not "she[d] light on [EPA's] performance of its statutory duties." *Fed. Labor Relations Auth.*, 510 U.S. at 497. EPA explains that email addresses are added to the lists when an individual either self-registers (by text message or through the website) or attends a conference where EPA is an exhibitor. Travers Decl. ¶ 7; Lousberg Decl. ¶ 7. Appearing on these lists does not by itself suggest any effort to influence the decision making of the agency. If Plaintiff sought the email addresses of individuals petitioning EPA to take some action or commenting on a proposed rule, we would have a different case. *See People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 305–06 (D.D.C. 2007) (explaining that "[w]hen a citizen petitions his government to take some action, courts have generally declined to find the identity of the citizen to be information that raises privacy concerns under exemption 6" (quoting *Lardner v. U.S. Dep't of Justice*, No. 03-cv-180, 2005 WL 758267, at *18 (D.D.C. Mar. 31, 2005)). But that is not what the record suggests. Appearing on these distribution lists does not

suggest any desire to influence the agency and is a function of actions taken by the owners of the email addresses.[4]  As such, more is revealed about the interests of those owners rather than about how or whether EPA is performing its statutory duties.  *See Reed v. NLRB*, 927 F.2d 1249, 1252 (D.C. Cir. 1991) (finding the withholding of *Excelsior* list appropriate under Exemption 6 because "'disclosure of information about private citizens that is accumulated in various governmental files' would 'reveal[] little or nothing about an agency's own conduct.'") (quoting *U.S. Dep't of Justice v. Reporters Committee For Freedom of Press*, 489 U.S. 749, 772 (1989)); *Maryland v. U.S. Dep't of Veteran Affairs*, 130 F. Supp. 3d 342, 353 (D.D.C. 2015) ("The public interest in the release of email addresses containing individual's names is practically nonexistent."); *see also NARFE*, 879 F.2d at 876 ("[N]o one would request simply all 'names and addresses' in an agency's files, because without more, those data would not be informative.").

For similar reasons, the Court finds that Plaintiff's second proffered public interest in disclosure does not outweigh the privacy interests of the individual email address owners.  Plaintiff argues that disclosure of the lists would reveal a "new vehicle for how EPA is communicating its national regulatory policies and future actions with the public."  Pl.'s Mot. at 28–29.  With respect to the "Prepare for Harmful Algal Bloom" list—which EPA has released with email addresses redacted but with the names of individuals—that much can be determined with the Exemption 6 redactions applied.  *See VoteHemp, Inc. v. Drug Enf't Admin.*, 567 F. Supp. 2d 1, 16 (D.D.C. 2004) ("[T]he names and addresses of government employees or third

---

[4] Plaintiff argues that the calculus should change because the lists are constructed in part by the agency after certain individuals attend conferences.  Pl.'s Mot. at 29–30.  But regardless of whether EPA "affirmatively selected those email addresses to be included within the distribution list," *id.* at 30, appearing on the list still says more about the individuals on the list than it does about the agency.

13

parties would not shed any more light on the subject at issue, beyond the information already in plaintiff's possession."). And for the "Conestoga River Watershed" list, which only contains email addresses without associated names, disclosure does not serve Plaintiff's proffered purpose. Without evidence, Plaintiff suggests that "EPA has effectively replaced Federal Register notices of its actions" by using these distribution lists to disseminate notice of official agency action instead.[5] Pl.'s Mot. at 29. But even if that were true, Plaintiff does not explain how knowing the actual email addresses would demonstrate the "new vehicle" for regulatory communication. Accordingly, the disclosure of the email addresses would not "she[d] light on [EPA's] performance of its statutory duties." *Fed. Labor Relations Auth.*, 510 U.S. at 497.

On balance, the Court finds that the interest in controlling the dissemination of a private email address outweighs the virtually nonexistent public interest in disclosure. *NARFE*, 879 F.2d at 879 ("We need not linger over the balance; something, even a modest privacy interest, outweighs nothing every time."); *Gov't Accountability Project*, 699 F. Supp. 2d at 106 (allowing withholding of private email addresses on job applications because "releasing their email addresses serves no public interest because these email addresses would not reveal 'what the government is up to'"). Disclosure of the privately held email addresses, which would allow Plaintiff and any other party to immediately contact the individual owners of the addresses, does not serve either of Plaintiff's proffered public interests in disclosure. The disclosure statement on EPA's website where individuals sign up to receive emails further supports the application of Exemption 6. In short, the owners of the email addresses have a more than *de minimis* interest in the nondisclosure of their contact information and the email addresses themselves do not show

---

[5] Both email communications, attached to EPA's declarations, do not announce any official agency action that would normally appear in the Federal Register. *See* Travers Decl. Ex. 1; Lousberg Decl. Ex. 1.

14

"what the government is up to." Accordingly, the Court finds that EPA properly invoked Exemption 6 to withhold both email distribution lists at issue.[6]

### 3. Segregability

The Court has a duty to consider whether the agency has met its obligation to produce all segregable, nonexempt information. *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010) (referring to court's "affirmative duty to consider the segregability issue sua sponte" (quoting *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007)). This obligation can be fulfilled through a sworn declaration from an agency official. *Milton v. U.S. Dep't of Justice*, 842 F. Supp. 2d 257, 260 (D.D.C. 2012) ("An affidavit stating that an agency official conducted a review of each document and how she determined that no document contains segregable information fulfills the agency's obligation."). Such a declaration must include "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." *Ctr. For Pub. Integrity v. United States Dep't of Commerce*, 401 F. Supp. 3d 108, 116 (D.D.C. 2019) (quoting *Valfells v. CIA*, 717 F. Supp. 2d 110, 120 (D.D.C. 2010)). Once such a declaration has been submitted, agencies are "entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Am. Ctr. for Law & Justice v. United States Dep't of Justice*, 325 F. Supp. 3d 162, 175 (D.D.C. 2018) (citing *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007)). A plaintiff can rebut

---

[6] Plaintiff argues in the alternative that disputed facts regarding the potential consequences of disclosure, previous disclosures made by EPA, and what constitutes an "unwarranted invasion of privacy" should preclude EPA from obtaining summary judgment. Pl.'s Mot. at 32–33. The Court disagrees and finds that the declarations submitted by EPA and the facts the parties do not dispute sufficiently support the holding here. *See Scudder*, 254 F. Supp. 3d at 140 ("Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'") (quoting *Judicial Watch, Inc.*, 715 F.3d at 941 (internal citations omitted)).

15

this presumption by producing a "quantum of evidence," at which point the government must "demonstrate that no segregable, nonexempt portions were withheld." *Id.*

EPA submitted two supplemental declarations that speak to the segregability of non-exempt information. As noted above, email addresses publicly available do not enjoy protection from disclosure under Exemption 6. Acknowledging that some email addresses on both lists may be publicly available, EPA "conducted a sample review of 10 percent of [the lists] . . . to identify email addresses that appeared to be associated only with a company or entity and not associated with a particular individual." 2d Travers Decl. ¶ 5; 2d Lousberg Decl. ¶ 4. For each list, EPA personnel conducted a line-by-line review of ten percent of the emails, amounting to forty-two pages and 2,226 email addresses for the "Prepare for Harmful Algal Bloom" list and 102 pages and 4,794 email addresses for the "Conestoga River Watershed" list. 2d Travers Decl. ¶ 8; 2d Lousberg Decl. ¶ 6. To determine whether the email address could only be associated with a business or public entity, EPA used the following criteria:

> (1) the prefix and domain of the email address both included the business or entity's *full* name and did not include any reference to a person's name; (2) the domain of the email address was a business or entity's name and the prefix of the email address was an identifiable word or abbreviation that did not include any reference to a person's name; or (3) the prefix of the email address referred to a portion or abbreviation of the business or entity identified in the domain of the email address and did not include any reference to a person's name.

2d Travers Decl. ¶ 10; 2d Lousberg Decl. ¶ 8. EPA found that 0.45 percent of the "Prepare for Harmful Algal Bloom" list and one percent of the "Conestoga River Watershed" list met the criteria, but the agency was "unable to determine definitely that the [] email addresses were only associated with a business or public entity and not an individual." 2d Travers Decl. ¶ 11; 2d Lousberg Decl. ¶ 9. Because of the difficulties in definitively identifying public email addresses and the "significant time and expense required to analyze" the lists with tens of thousands of

email addresses, EPA determined that "the information is not reasonably segregable." 2d Travers Decl. ¶ 12; 2d Lousberg Decl. ¶ 10.

Plaintiff argues that this position is inconsistent with EPA's original proposal to review the email distribution lists and attempt to release any email addresses not associated with an individual. Pl.'s Reply at 21–22. According to Plaintiff, the supplemental declarations submitted suggest EPA's position is "an argument of convenience" and reflects an arbitrary view of the distinction between privately held and publicly available email addresses. *Id.* Plaintiff does not specifically take issue with the criteria used by EPA to determine whether an address can be associated only with a business or public entity nor does Plaintiff challenge EPA's determination that only a very small percentage of the email addresses meet the criteria.

The Court finds that the justification provided by EPA sufficiently demonstrates that all reasonably segregable material has been released. The agency laid out in detail the steps it took to determine how many email addresses could only be associated with a business or public entity. The declarations indicate that, to the extent it is even possible to definitively distinguish between privately held and publicly available email addresses, a very small percentage of the email addresses would fit the criteria. Plaintiff does not object to EPA's method nor its findings. In *Mead Data*, albeit in a slightly different context, the court stated "if only ten percent of the material is non-exempt and it is interspersed line-by-line throughout the document, an agency claim that it is not reasonably segregable because the cost of line-by-line analysis would be high and the result would be an essentially meaningless set of words and phrases" could satisfy an agency's segregability obligation. 566 F.2d 242, 261 (D.C. Cir. 1977). The same principle applies here. Given the presumption in EPA's favor, the Court's findings regarding the lack of public interest in disclosure of the distribution lists, and the very small percentage of potentially

17

non-exempt email addresses, EPA's declarations sufficiently fulfill its segregability obligations. Although a literal line-by-line review has not been conducted, the Court is satisfied that EPA's method supports its claim that any non-exempt information is not *reasonably* segregable.

### 4.  Processing Fees

Plaintiff claims that the processing fees requested by EPA—which ended up at $98—are unreasonable.  Plaintiff states that "EPA merely added block redactions of every single email address," which, according to Plaintiff, means the requested fee "does not reflect a reasonable level of time and effort."  Pl.'s Mot. at 33–34.  EPA's declaration explains the additional work that went into processing the FOIA request: "EPA searched for the email distribution list, downloaded the list into a producible format, reviewed the list, and redacted the final list."  Travers Decl. ¶ 21.  EPA states that "these tasks took approximately 9 hours to complete, [but] EPA charged for only 3.5 hours of work at $28 per hour, totaling $98."  *Id.*  Plaintiff does not dispute EPA's description of the additional work completed to process the request.  "Plaintiff offers no substantive response to EPA's argument," *Hall & Associates v. United States Envtl. Prot. Agency*, 14 F. Supp. 3d 1, 8 (D.D.C. 2014), and instead suggests that the only work that should matter is the application of the block redaction.  "A plaintiff's bare allegation that a fee assessment is unreasonable, however, is insufficient to avoid summary judgment."  *Id.* (citing *Nat'l Treas. Empl. Union v. Griffin*, 811 F.2d 644, 650 (D.C. Cir. 1987)).  Based on EPA's explanation of the additional work required to complete the request, and Plaintiff's failure to meaningfully address that explanation, the Court finds that the requested fee is reasonable.

## V.  CONCLUSION

For the foregoing reasons, EPA's motion for summary judgment (ECF No. 8) is **GRANTED** and Plaintiff's cross motion for summary judgment (ECF No. 9) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 12, 2020                                                                  RUDOLPH CONTRERAS
                                                                                                              United States District Judge